**ST. PAUL GUARDIAN INSURANCE COMPANY, Plaintiff,**

v.

**CENTRUM G.S. LIMITED, et al., Defendants.**

No. Civ.A. 3:97CV1478–L.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 29, 2003.

Clayton E. Bailey, Baker & McKenzie, R. Brent Cooper, R. Douglas Rees, Cooper & Scully, Dallas, TX, for St. Paul Guardian Insurance Company.

Faith Winsborough Bruner, Law Office of Faith W. Bruner, Dallas, TX, for Gerry Perdue.

Bruce L. Dean, Lynn Pham Moore & Ross, Lisa A. Dreishmire, Bracewell & Patterson, Daniel T. Mabery, Ernest Martin, Jr., Haynes & Boone, Maureen F. Moore, Lynn Pham Moore & Ross, Dallas, TX, for Centrum GS Limited.

## ORDER

LINDSAY, District Judge.

This case has been remanded from the Fifth Circuit Court of Appeals for the court to determine the merits of Plaintiff St. Paul Guardian Insurance Company's ("St. Paul" or "Plaintiff") late notice defense, and whether St. Paul has a duty under the CGL policy to defend Defendants against the claims asserted in the underlying state court action, styled *Gerry Perdue v. Yaromir Steiner, Steiner & Associates, Inc. d/b/a the Centrum Property Company, d/b/a Centrum Towers and d/b/a Steiner Management, Inc.*, Cause No. 95–08507–F, 116th Judicial District Court, Dallas County, Texas.

The court has before it St. Paul Guardian Insurance Company's Motion for Summary Judgment, filed February 23, 1998; Defendants' Cross–Motion for Summary Judgment, filed March 26, 1998; St. Paul Guardian Insurance Company's Reply to Defendants' Response to St. Paul Guardian Insurance Company's Motion for Summary Judgment, filed April 10, 1998; St. Paul Guardian Insurance Company's Response to Defendants' Cross–Motion for Summary Judgment, filed April 15, 1998; Defendants' Reply Brief in Support of Defendants' Cross–Motion for Summary Judgment, filed April 30, 1998; St. Paul Guardian Insurance Company's Surreply, filed May 18, 1998; Defendants' Final Reply Brief in Support of Cross–Motion for Summary Judgment, filed May 22, 1998; St. Paul Guardian Insurance Company's Supplemental Brief on Issue of Notice, filed February 17, 1999; Defendants' Response to St. Paul Guardian Insurance Company's Supplemental Brief on Issue of Notice, filed March 10, 1999; St. Paul Guardian Insurance Company's Reply to Defendants' Response to Plaintiff's Supplemental Brief on Issue of Notice, filed March 25, 1999; Plaintiff's Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment, filed May 31, 2002; and Defendants' Supplemental Brief After Issuance of the Fifth Circuit Court of Appeals' Mandate, filed May 31, 2002. After careful consideration of the parties' written submissions, the summary judgment evidence, and applicable authority, the court **denies** St. Paul Guardian Insurance Company's Motion for Summary Judgment on its late notice defense, and **grants** Defendants' Cross–Motion for Summary Judgment on Plaintiff's late notice defense.

## I. Factual and Procedural Background

The background facts and procedural history of this case are set out in the court's Memorandum Opinion and Order, filed October 31, 2000, and the Fifth Circuit's decision in *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709 (5th Cir.2002). The court therefore only recites those facts necessary to determine the issue of Plaintiff's late notice defense. The relevant facts are not in dispute.

St. Paul is an insurance company headquartered in St. Paul, Minnesota. Defendant Centrum G.S. Limited ("Centrum") is a Texas limited partnership and owner of the Centrum Building, a nineteen-story office tower located in Dallas, Texas. Defendant Goodyork Corporation ("Goodyork") is a Texas corporation headquartered in Los Angeles, California and general partner of Centrum. Defendant Steiner & Associates, Inc. ("Associates") is a Florida corporation and property manager of the Centrum Building. Defendant Yaromir Steiner ("Steiner") is a citizen of the state of Florida, employed by Associates and an officer of Associates. Brenda Brushaber ("Brushaber") is a citizen of the state of Texas and employed by Associates as the General Manager of the Centrum Building.[1]

1. The court refers to all Defendants collectively as "Defendants."

In 1994, St. Paul issued a Commercial General Liability insurance policy ("CGL policy") to Centrum effective from December 23, 1994, to December 23, 1995. The CGL policy covers *inter alia,* bodily injury, property damage and personal injury liability. The CGL policy contains provisions concerning the insured's duties in the event of an incident that could result in liability damages covered under the policy, written demands by a third-party, or suit against its insured. Among these provisions is the requirement that the insured notify the insurer when an incident happens as soon as possible, and to send a copy of all written demands, as well as all written documents, if a lawsuit is commenced.

In early February 1995, Gerry Perdue ("Perdue") assumed the position of Chief Building Engineer for the Centrum Building. Approximately one month later, Perdue's employment as Chief Building Engineer was terminated. Perdue filed suit against Brushaber, Associates and Steiner on August 23, 1995, alleging claims under state law for wrongful termination, intentional infliction of emotional distress, libel, slander, invasion of privacy, fraud, negligence and breach of contract. On February 7, 1996, Perdue filed his First Amended Original Petition adding Centrum and Goodyork as defendants. Centrum filed its answer to Perdue's petition on March 8, 1996, but did not notify St. Paul of the lawsuit until February 26, 1997, when its counsel forwarded to St. Paul a copy of the suit papers from the Perdue lawsuit. St. Paul initially denied coverage based on Centrum's late notice and, subsequently, on its determination that Perdue's claims were not covered under the provisions of the CGL policy. On July 18, 1997, Perdue filed his Fourth Amended Original Petition in the underlying litigation. Trial of the Perdue lawsuit was scheduled for May 11, 1998. The case was actually tried in June 1999.

St. Paul filed this declaratory judgment action against Defendants on June 19, 1998, seeking a judicial declaration that it has no duty to defend or indemnify Centrum or any other defendant in the Perdue action. St. Paul subsequently filed a motion for summary judgment contending that Perdue's claims are not covered under the CGL policy, and that it, therefore, has no duty to defend or indemnify Defendants in the underlying action. St. Paul also asserts that Defendants' late notice of Perdue's claims and suit relieved it of its obligations under the CGL policy. Defendants in turn filed a cross-motion for summary judgment, contending that Perdue's claims are covered under the CGL policy and that St. Paul is therefore obligated to defend them, and that St. Paul was not relieved under the policy, because it failed to show that it was prejudiced by any delay in Defendants' untimely notice of Perdue's claims and suit.

On October 31, 2000, the court granted summary judgment in favor of St. Paul, finding, *inter alia,* that Perdue's claims did not fall within the personal injury provisions of the CGL policy, because the alleged personal injuries were not the result of the insured's business activities. Since the court determined that Defendants' actions relating to the termination of Perdue were not business activities as required under the CGL policy, it did not reach the merits of St. Paul's late notice defense. Defendants appealed the court's decision to the Fifth Circuit. On March 11, 2002, the Fifth Circuit issued its decision, in which it affirmed in part and reversed in part the court's decision, and remanded the case for the court to determine the merits of St. Paul's late notice defense.

Thereafter, the court issued an order directing the parties to submit supplemental briefing regarding St. Paul's late notice defense, including any recent authority

that might have some impact on the court's decision.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations

are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

### A. St. Paul's Motion for Summary Judgment

St. Paul moves for summary judgment, contending that Defendants' late notice of Perdue's personal injury claims [2] and

---

**2.** In light of the Fifth Circuit's decision, there is no longer a dispute that certain of Perdue's claims fall within the coverage for personal injury liability under the CGL policy. *See St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 714 (5th Cir.2002).

lawsuit relieves it of its obligations to perform under the CGL policy. St. Paul explains that pursuant to the express language of the CGL policy, Defendants had a duty to notify it "as soon as possible" when an incident happened that could result in liability damages covered under the policy, and to forward all written demands as well as all legal documents should a lawsuit commence. St. Paul contends that the notice requirement was a condition precedent to its coverage obligations, and that, because Defendants provided untimely notice of Perdue's claims and lawsuit, they are precluded from recovery under the CGL policy. Defendants do not dispute that the notice they provided was untimely, or that their delayed notice constitutes a breach of the CGL policy; rather, they contend that any breach of the notice provision was immaterial, and, therefore, St. Paul may not be relieved of its obligations under the policy, absent a showing of prejudice. St. Paul disagrees, contending that it is not required to show prejudice as a result of Defendants' late notice for personal injury claims under either the express terms of the CGL policy or Texas law. Thus, the issues the court must decide are (1) whether St. Paul must show that it was prejudiced by Defendants' untimely notice of Perdue's claims and lawsuit before it may deny legitimately personal injury coverage under the CGL policy; and, if prejudice is required, (2) whether St. Paul has established that it was prejudiced by Defendants' late notice.

### 1. *Prejudice Required Under Texas Law*

◼ St. Paul argues that under the terms of the CGL policy, it is not required to show prejudice as a result of late notice for "personal injury" claims. It argues that this is because the CGL policy expressly limits the prejudice requirement to "bodily injury" and "property damage" claims, and does not mention claims covered by the provision for "personal injury" liability. St. Paul therefore contends that since personal injury claims are not mentioned in this provision, the policy implies that it may deny coverage on late notice of personal injury claims without a showing of prejudice. Defendants disagree, contending that no such implication can be made, because the policy neither specifically mentions the consequences of not giving timely notice for a personal injury claim nor defines the notice requirement as a condition precedent to coverage. Defendants contend that absent such a clause, prejudice must be shown. The court agrees with Defendants' position.

◼ The CGL policy does not expressly state that the prejudice requirement applies *only* to bodily injury and property damage claims. To interpret the policy as implying that the prejudice requirement applies only to bodily injury and property damages claims would render the insurance policy ambiguous given the language in the General Provisions, which provides that "[f]ailure to comply [with the insured's duties under the policy] *could* affect coverage." Pl.'s Mot. for Summ. J., Ex. "A," General Rules—Texas—Liability at 3. As Defendants point out, the CGL policy does not expressly provide that the notice requirement is a "condition precedent" to coverage or define the consequences of nonperformance of the notice requirement as to personal injury claims. Since one provision states generally that failure to comply *could affect* coverage (which would include all general liability coverage), and a different provision specifically sets forth what will happen in the event late notice is provided in connection with "bodily injury" and "property damage" claims, the insurance policy would be reasonably susceptible to different inter-

pretations. On one hand, one could interpret the contract as meaning that St. Paul may deny coverage for personal injury claims without a showing of prejudice for noncompliance with the notice requirement. On the other hand, one could interpret it as meaning that St. Paul will only deny coverage for bodily injury and property damage claims for failure to comply with the notice requirement upon a showing of prejudice, but that other general liability coverage, including coverage for personal injury liability, would not be affected. When the language of a policy is susceptible to more than one reasonable interpretation, it is ambiguous, and the court must adopt the construction that most favors coverage for the insured. *See State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *see also Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984) (insurance policies are strictly construed in favor of the insured to avoid exclusion of coverage). This is especially so when dealing with exceptions and words of limitation. *See Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984); *Blaylock v. Am. Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 721 (Tex.1982); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976). Because St. Paul's proposed interpretation would render the insurance policy ambiguous, the court declines to accept it, and will enforce the policy as written. *See Upshaw v. Trinity Cos.,* 842 S.W.2d 631, 633 (Tex.1992) ("If the written instrument is worded so that it can be given only one construction, it will be enforced as written.").

Here, the insurance contract is expressed in plain and unambiguous language. The policy provision containing the prejudice requirement states:

**Effect of failure to comply with the notice requirement.** The failure to provide information or give [St. Paul] copies of any document in connection with a general liability bodily injury and property damage claim or suit by anyone required to do so [will not] affect [St. Paul's] obligation under any of the following general liability protection insurance agreements, unless the failure to comply with the notice requirement prejudices [St. Paul's] response to the claim:

● Commercial general liability protection

● Products and completed work liability protection.

● Owners or contractors liability protection.

Pl.'s Mot. for Summ. J., Ex. "A," General Rules—Texas—Liability at 4. Since the claims at issue in this case fall within the coverage for personal injury liability, and not bodily injury or property damage liability, St. Paul's reliance on this provision is misplaced, as it is inapplicable to the facts of this case.

Moreover, St. Paul in essence attempts to use this provision as a means to create, by implication, a preclusion or forfeiture clause for personal injury claims when nothing in the policy expressly states the circumstances under which forfeiture or preclusion of such claims would occur. In *Laster v. Am. Nat'l Fire Ins. Co.,* 775 F.Supp. 985 (N.D.Tex.1991), a case relied on by Defendants, an insurance company sought to avoid liability coverage based on the insured's late notice. The notice provision in the basic coverage part of the insurer's policy did not define the consequences of nonperformance of the notice requirement. The court held that absent policy language expressly providing that the policy's notice requirement was a condition precedent to coverage, the insurer would have to show that it was prejudiced by the insured's noncompliance in order to

avoid liability under the policy. *Id.* at 990–91. The court stated:

> If breach of a notice provision in the policy cannot work a forfeiture of coverage absent an express forfeiture provision in the policy, for the same reason, noncompliance with such a provision, absent policy language expressly so providing, cannot be deemed to be nonperformance of a condition precedent. Proof of prejudice to the insurer as a result of breach, or noncompliance, is required in either event for coverage to be avoided.

*Id.* at 991. As the drafter of the policy, St. Paul had the duty to set forth expressly and in unambiguous terms the circumstances under which preclusion or forfeiture of coverage for personal injury liability would occur. It did not do so. St. Paul cannot be allowed at this juncture to manipulate the policy in such a way that would allow it to deny coverage for personal injury liability when it wholly failed to expressly set forth the terms and conditions in the policy that would result in a forfeiture of such coverage. St. Paul's argument that it is not required to show prejudice by the terms of the CGL policy is rejected.

St. Paul next contends that under Texas law, it may deny coverage for Defendants' breach of the notice provision without showing prejudice. Defendants respond that under Texas law, insurance policies are contracts subject to general rules of contract construction, and that only a material breach of a contract excuses performance. Defendants further contend that an insured's failure to comply with a policy's notice requirement does not constitute a material breach of the insurance contract, unless the insurer has been prejudiced by the late notice. Defendants cite *Hanson Prod. Co. v. Americas Ins. Co.,* 108 F.3d 627, 630 (5th Cir.1997), in support of their position. The court is convinced

that *Hanson* controls the disposition of this case.

In *Hanson,* the insured purchased comprehensive general liability and excess liability insurance policies from two separate insurers. The notice provisions in the primary policies required the insured to notify the insurer either "immediately" of any occurrence under the policy likely to result in a claim, or "as soon as practicable" of an occurrence under the policy and "immediately" of a claim or suit against the insured. Both primary policies contained a further clause that no action would lie against the insurer unless, as a condition precedent, the insured fully complied with all terms of the policy. *Id.* at 628. The insured was sued in state court for a claim potentially covered by the policies, but failed to timely notify the insurers of the claim. As a result, the insurers refused coverage. The insured brought suit against its insurers for breach of contract based on their denial of coverage for late notice of claim. The district court entered summary judgment in favor of the insurers, finding that the notice required in the primary policies was a condition precedent to the insurers' coverage obligations, and that because the notice provided by the insured was untimely as a matter of law, it was barred from recover under the primary policies regardless of whether the insurers had been prejudiced by the late notice. The Fifth Circuit, sitting as an *Erie* court, reversed the district court's decision, and predicted that the Texas Supreme Court would require insurers to show prejudice from late notice before they could be relieved of their obligation to provide coverage, even though the notice requirement was a condition precedent under the insurance policy. *See Hanson,* 108 F.3d at 631.

In reaching its decision, the Fifth Circuit followed the reasoning of *Hernandez*

*v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), in which the Texas Supreme Court held that an insurer may not escape liability based on an insured's noncompliance with a settlement-without-consent exclusion in an insurance contract unless the insurer was actually prejudiced by the insured's settlement with the tortfeasor. *See Hanson,* 108 F.3d at 630 (citing *Hernandez,* 875 S.W.2d at 692). The rationale for this holding was that insurance contracts are subject to the general principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform. *Id.* (quotation marks omitted). *Hernandez* concluded that if the insurer is not prejudiced by the breach, the breach is not material, the insurer has not been deprived of the benefit of the bargain, and it should not be relieved of its obligation to provide coverage. *Id.* In turn, the Fifth Circuit found that the reasoning of *Hernandez* would equally apply to a notice-of-occurrence, notice-of-claim, or notice-of-suit clause. The court explained:

> The fundamental principle of contract law recognized in *Hernandez*—that a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not—is equally applicable to notice cases. In the words of *Hernandez,* "an insurer who is not prejudiced by [the breach] may not deny coverage...." If anything, we believe that the failure to give notice of a claim poses a smaller risk of prejudice than failure to obtain consent to a settlement. In many in-

stances of untimely notice of a claim, the insurer is not prejudiced at all, and ultimately may not face any coverage obligation. Conversely, in many if not most cases where an insured settles a case without the insurer's consent, the insurer faces at least some liability. If the Texas Supreme Court does not presume prejudice in a settlement-without-consent case, we are persuaded that it would not presume prejudice in a failure-of-notice case.

*Hanson,* 108 F.3d at 630–631 (footnote and citation omitted).

St. Paul contends that *Hanson* is distinguishable, because the sole issue in that case was whether an order issued by the Texas State Board of Insurance (Board Order 23080) applied to surplus lines policies issued by unlicensed carriers, or whether it applied to general liability policies issued by admitted carriers.[3] It also contends that, unlike this case, *Hanson* only involved claims under a CGL and excess policy for bodily injury and property damage claims, and did not address whether the prejudice requirement applied to claims for personal injury. The court, however, declines to read *Hanson* so narrowly.

Contrary to St. Paul's assertion, the Fifth Circuit's ruling did not turn on the applicability of the Insurance Board's mandatory endorsement to the insurance policies in issue. Indeed, the court predicted that the Texas Supreme Court would require surplus lines insurers, that is, unlicensed insurers, *see Hanson,* 108 F.3d at 629 (citing Tex. Ins.Code Ann. art. 1.14–2,

---

**3.** The State Board's mandatory endorsement, which is applicable to all general liability policies issued in Texas, provides:

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring

the insured to give notice of [the] action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

*Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 635 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

§ 2(b) (West Supp.1997)), to show prejudice by an insured's late notice, *even though the Insurance Board's mandatory endorsement requiring late notice did not apply to surplus lines policies. Id.* at 630. The court explained that this was because it believed that the Texas Supreme Court "would opt for a uniform rule of construction, reasoning that surplus lines insurers are surely aware of their policies, like all policies issued to Texas residents, are subject to Texas law and the rules of construction followed by the Texas courts." *Id.* at 630.

The court also rejects St. Paul's contention that *Hanson* only applies to claims under a general liability policy for bodily injury and property damage, and not personal injury. In cases decided both before and after *Hanson,* the Fifth Circuit has stated that the impact untimely notice has on coverage depends on the *type of insurance policy* issued, not the *type of coverage* provided under the policy as St. Paul

seems to suggest. *See, e.g., Federal Ins. Co. v. CompUSA, Inc.,* 319 F.3d 746, 754 (5th Cir.2003); *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658 (5th Cir.1999); *FDIC v. Booth,* 82 F.3d 670, 678 (5th Cir.1996). The policies in issue in *Hanson* were occurrence-based comprehensive general liability policies.[4] In "occurrence" based policies, notice is subsidiary to the event that triggers coverage, and is generally included in the policy to aid the insurer in the administration of its coverage of claims. *Matador,* 174 F.3d at 658 (citing *FDIC v. Booth,* 82 F.3d 670, 678 (5th Cir.1996)). Courts have not permitted insurance companies to deny coverage on the basis of untimely notice under an "occurrence" policy unless the company shows actual prejudice from the delay.[5] *Id.* (citing *Hirsch v. Texas Lawyers' Ins. Exch.,* 808 S.W.2d 561, 562 (Tex.App.—El Paso 1991, writ denied)) (noting that the prejudice-notice requirement applies to "occurrence" poli-

---

4. Traditionally, courts distinguish between two types of insurance policies: "occurrence" policies and "claims-made" policies. An "occurrence" policy "covers all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period." *CompUSA,* 319 F.3d at 754 (internal quotation marks and citation omitted). In contrast, a "claims-made" policy "covers occurrences which may give rise to a claim that comes to the attention of the insured and is made known to the insurer during the policy period." *Id.* In a "claims-made" policy, notice itself constitutes the event that triggers coverage. *Matador,* 174 F.3d at 659 (citing *FDIC v. Mijalis,* 15 F.3d 1314, 1330 (5th Cir.1994)). "Courts interpret notice provisions in 'claims-made' policies strictly because in these types of policies, unlike in 'occurrence' policies, the insured and insurer specifically negotiate the terms of the notice provision." *Id.* Because courts strictly interpret notice provisions in a claims-made policy, an insurer may deny coverage without a showing of prejudice.

5. Defendants mention in a footnote that the CGL policy in issue in this case is an "occurrence" policy, but do not expound on this contention. St. Paul does not dispute this contention. Since the issue is not squarely before the court, it need not decide whether the CGL policy constitutes an "occurrence" or "claims-made" policy. The court, however, observes that the policy has characteristics of an "occurrence" policy. First the notice provision at issue is part of the primary insurance policy, rather than as part of additional bargained for coverage between the insured and insurer. Second, with respect to personal injury liability coverage, the policy states: "We'll apply this agreement to claims or suits for covered personal injury *whenever* [they are] made or brought." *See St. Paul's Mot. for Summ. J., Exhibit* A (Insuring Agreement 36 Liability Coverage at 4) (emphasis added). That the policy does not specifically require that claims for covered personal injury be made during the policy period, or within a specific time period, indicates that the CGL policy is an "occurrence" policy.

cies). Because the *type of insurance coverage* provided under a CGL policy is not determinative of whether an insurer must show prejudice in a notice case, St. Paul's attempt to distinguish *Hanson* on this basis misses the mark.

St. Paul relies extensively on *Interstate Battery v Northbrook*, 961 F.2d 214, 1992 WL 84705(5th Cir.1992), a case that predates *Hanson*, and *Gemmy Indus. Corp. v. Alliance General Ins. Co.*, 190 F.Supp.2d 915 (N.D.Tex.1998), *aff'd without opinion*, 200 F.3d 816 (5th Cir.1999), to support its argument that an insurer need not show prejudice by an insured's late notice.[6] St. Paul's reliance on *Interstate Battery*, is misplaced, as that case is distinguishable.

In *Interstate Battery*, the insured provided its insurer with notice of a lawsuit more than five months after it had been sued, and after it had incurred $120,000 in defense costs. The insurer, pursuant to a reservation of rights, agreed to defend its insured in the underlying lawsuit, but refused to pay pre-notice defense costs because of the insured's late notice. Here, St. Paul, unlike the insurer in *Interstate Battery*, did not agree to defend, or undertake the defense of, Defendants in the underlying lawsuit, and seeks to *avoid liability coverage* altogether based on Defendants' late notice, not merely defense costs incurred by the insured prior to giving notice of suit to its insurer.

The court declines to follow *Gemmy Industries*, as it reflects the traditional view that an insurer need not prove prejudice to prevail in a late notice case. This position is inconsistent with *Hernandez*, which rec-

ognized that only a material breach of an insurance contract excuses performance. Moreover, as stated before, the Fifth Circuit has recognized a modern trend in the case law away from the traditional contractual approach towards a view that considers prejudice to an insurer a relevant factor in determining whether to enforce a condition precedent to insurance coverage. *See Hanson*, 108 F.3d at 631.

Given that the CGL policy does not expressly provide that the notice requirement is a condition precedent to liability, and in light of the holdings of *Hanson* and *Hernandez*, the court predicts that Texas courts would require St. Paul to show that it was prejudiced by Defendants' late notice of Perdue's personal injury claims before it may legitimately deny coverage or benefits under the policy. *Cf. Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174 (Tex.1995) (stating in *dicta* that an insured's failure to notify the insurer of a suit against her does not relieve the insurer from liability for the underlying judgment unless the lack of notice prejudices the insurer) (citing *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex.1993)).

## 2. St. Paul Has Failed to Establish Prejudice Sufficient to Excuse Performance

Having determined that St. Paul must show that it was prejudiced by Defendants' late notice, the court next considers whether St. Paul has established that it was prejudiced by Defendants' delayed

---

**6.** *Interstate Battery* is an unpublished opinion decided by a panel of the Fifth Circuit in 1992. Although unpublished opinions issued on or before January 1, 1996 are precedent, they should "normally be cited only when the doctrine of res judicata, collateral estoppel or law of the case is applicable (or similarly to show double jeopardy, abuse of the writ, notice, sanctionable conduct, entitlement to at-

torney's fees, or the like)." *See* 5th Cir. R. 47.5.3. Since neither of these circumstances is present in this case, the court views *Interstate Battery* as persuasive authority, rather than binding precedent. In addition, *Gemmy* was affirmed by the Fifth Circuit without opinion, and, therefore, has no precedential value. *See* 5th Cir. R. 47.6.

notice. Whether an insurer is prejudiced by an insured's untimely notice is generally a question of fact, *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 866 (Tex.App.—Corpus Christi 1998, pet. denied); however, if the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations to defend or indemnify an insured, the court may decide the issue on summary judgment.

St. Paul does not allege in its Complaint that it suffered prejudice as a result of Defendants' late notice, *see* Plaintiff's First Amended Complaint for Declaratory Judgment at 14–16; however, it now argues that it was prejudice as a matter of law by Defendants' late notice, because it lost the opportunity to investigate the case and to manage the defense for 18–24 months. St. Paul further contends that because it did not receive timely notice of Perdue's claims and lawsuit, it lost the ability to participate in early settlement negotiations in the case. In support of this contention, St. Paul points to correspondence from its Claim Specialist, Ms. Laina Heathman, to Ms. Maureen Moore, Centrum's former counsel, and Ms. Faith Bruner, Perdue's counsel, in which Ms. Heathman commented that before St. Paul received notice, Perdue's demand, as reported by Centrum, was only $19,500, but after St. Paul received notice, the demand increased drastically, in that Perdue demanded the limits of the CGL policy, that is, $1 million per occurrence for bodily injury, property damage, and personal injury. According to St. Paul, this evidence reflects that Defendants' late notice deprived it the opportunity to resolve Perdue's claims and lawsuit for less than $20,000.

St. Paul cites no cases in which a Texas court has held that an insurer's inability or failure to obtain a smaller settlement, or more favorable settlement, constitutes prejudice sufficient to relieve an insurer of its duty to defend or indemnify its insured. Although little authority exists to explain what constitutes sufficient prejudice to relieve an insurer of liability under Texas law, *see Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844, 847 (Tex.App.—Corpus Christi 1991, no writ); *see also Kimble v. Aetna Cas. & Sur. Co.*, 767 S.W.2d 846, 849 (Tex.App.—Amarillo 1989, writ denied), courts that have addressed the issue have been quite specific and definitive in holding that prejudice occurs under the following circumstances: (1) when the insurer, without notice or actual knowledge of suit, receives notice after entry of default judgment against the insured; (2) when the insurer receives notice of the suit and the trial date is fast approaching, thereby depriving it of an opportunity to investigate the claims or mount an adequate defense; (3) when the insurer receives notice of a lawsuit after the case has proceeded to trial and judgment has been entered against the insured; and (4) when the insurer receives notice of a default judgment against its insured after the judgment has become final and nonappealable. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170 (Tex.1995); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164 (Tex.1993); *Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367 (Tex.1978); *Ohio Cas. Group v. Risinger*, 960 S.W.2d 708 (Tex.App.—Tyler 1997, writ denied); *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187 (Tex.App.—Corpus Christi 1993, no writ); *Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844 (Tex.App.—Corpus Christi 1991, no writ); *Members Ins. Co. v. Branscum*, 803 S.W.2d 462 (Tex.App.-Dallas 1991, no writ); *Kimble v. Aetna Cas. & Sur. Co.*, 767 S.W.2d 846 (Tex.App.—Amarillo 1989, writ denied); *Ratcliff v. Nat'l County Mut. Fire Ins. Co.*, 735 S.W.2d 955 (Tex.App.—Dallas 1987, writ dism'd); *Wheeler v. Allstate Ins. Co.*, 592 S.W.2d 2 (Tex.Civ. App.—Beaumont 1979, no writ). *Compare*

*Allstate Ins. Co. v. Pare,* 688 S.W.2d 680 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (failure to notify did not prejudice insurer because insurer had actual knowledge of suit). Under such circumstances, Texas courts will hold that prejudice exists, and that the insurer has no duty to defend or indemnify its insured. None of those circumstances is present in this case.

Given the substantial amount of insurance defense litigation based on an insured's duty to defend or indemnify that occurs in the State of Texas, the court is convinced that this is not the first time that an insurer has asserted prejudice on the basis asserted by St. Paul; yet the court is unable to find a case, and indeed the parties have cited none, which holds that the inability to settle a case for a smaller sum, or on more favorable terms, because of an insured's untimely notice constitutes prejudice. If such were recognized as constituting prejudice, surely there would be some published cases discussing the issue. Once again, all the cases that the court has found explaining what constitutes sufficient prejudice to relieve an insurer of its obligations describe situations whereby there has been a default judgment entered which resulted in an insured's inability to defend against the default judgment; the inability of the insurance company to investigate and defend the claim because of a rapidly approaching trial date; or the insurer had no notice or actual knowledge of the suit prior to the entry of default judgment against the insured. None of these cases, nor any other cases found by the court, indicates or holds that the inability or failure to obtain a smaller settlement amount or a more favorable settlement constitutes prejudice. Moreover, as stated before, none of these situations is present in this case. St. Paul is in effect requesting the court to expand the parameters of what constitutes prejudice in late-notice cases, when Texas courts, at least up to now, have been quite specific and definitive as to what constitutes prejudice to the insurer regarding untimely notice of a claim; *and the inability to obtain a more favorable settlement is not one of them.*

In light of the parties' failure to cite any cases on point, the court's inability to find any cases, and given that Texas courts have definitively and narrowly defined what constitutes prejudice sufficient to relieve an insurer of its obligation to defend or indemnify because of an insured's late notice, the court predicts that the Texas Supreme Court, if faced with the facts and issue now before the court, would hold that an insurer's inability to negotiate a more favorable settlement because of an insured's untimely notice does not constitute prejudice sufficient to relieve an insurer of its obligations under an insurance policy.

■ Although St. Paul's investigation of Perdue's claims may have been delayed by Defendants' late notice, such delay would not have prevented it from conducting an investigation of the claims, or collaborating with Defendants on discovery conducted prior to its receiving notice. It is undisputed that St. Paul received notice of Perdue's claims against Defendants, as well as the suit papers in the case, on February 26, 1997, more than one year before the case was scheduled to be tried in May 1998, and two years before the actual trial of the case in June 1999. It is also undisputed that Perdue filed a Fourth Amended Petition in the underlying lawsuit on July 18, 1997, close to five months after St. Paul received notice, almost ten months before the case was scheduled for trial, and nearly two years before the case was actually tried. St. Paul has failed to point to evidence in the record which establishes that it was prevented from investigating the underlying claims, developing a defense strategy, participating in the lawsuit, or otherwise representing its interests during

the pendency of the underlying litigation. For these reasons, St. Paul has failed to establish that it was prejudiced under Texas law by Defendants' late notice, and is, therefore, not entitled to summary judgment on its late notice defense. The court denies St. Paul's Motion for Summary Judgment as to its late notice defense.

## B. Defendants' Cross–Motion for Summary Judgment

Defendants have filed a cross-motion for summary judgment on St. Paul's late notice defense. Defendants contend that St. Paul may not preclude coverage for Perdue's claims because of their late notice without first demonstrating that it was prejudiced, and that St. Paul has failed to demonstrate, or create a genuine issue of material fact, that it was prejudiced by Defendants' late notice. St. Paul responds that it has raised a genuine issue for trial that it was prejudice as a result of Defendants' late notice, and points to correspondence from its Claims Specialist, Ms. Laina Heathman, which indicates that prior to St. Paul receiving notice, Perdue offered to settle his claims with Defendants for $19,500, but after it received notice, Perdue increased its settlement demand to $1 million. St. Paul asserts that it was prejudiced by Defendants' late notice, in that it lost the opportunity to negotiate a settlement of Perdue's claims for a smaller amount, specifically an amount less than $20,000.

For the reasons stated in its ruling on St. Paul's motion for summary judgment, the court determines that St. Paul has failed to demonstrate that it was prejudiced under Texas law by Defendants' late notice and, therefore, has failed to raise a genuine issue for trial on this matter. Accordingly, Defendants are entitled to judgment as a matter of law on St. Paul's late notice defense.

## IV. *Conclusion*

For the reasons herein stated, the court **denies** St. Paul's Motion for Summary Judgment, and grants Defendants' Cross–Motion for Summary Judgment. This action is hereby **dismissed with prejudice.** The court will issue judgment by separate document as required by Fed.R.Civ.P. 58.