832 P.2d 399

**Richard SCHROTH, Plaintiff–Appellee,**

**v.**

**NEW MEXICO SELF–INSURER'S FUND, Defendant–Appellant.**

**No. 20122.**

Supreme Court of New Mexico.

May 21, 1992.

Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, Scott P. Hatcher, Santa Fe, for defendant-appellant.

Victor A. Titus, Farmington, for plaintiff-appellee.

## OPINION

FRANCHINI, Justice.

This is an appeal from a declaratory judgment which found coverage under the New Mexico Self–Insurer's Fund's (NMSIF) contract of insurance for uninsured motorist benefits. Following a non-jury trial, the court entered its declaratory judgment on July 15, 1991, ruling that Richard Schroth may pursue uninsured motorist benefits from NMSIF. NMSIF appeals the court's judgment. We affirm.

### I.

On September 9, 1987, while employed by the City of Farmington (City), Schroth was involved in a motor vehicle collision with Robert L. Homrich. Schroth reported the accident to the City's Risk Management Department and an accident report was made. Terry Darby, the City's safety officer, investigated the accident. The City was self-insured with respect to workers' compensation coverage and to date has paid Schroth various workers' compensation benefits, including all of his medical bills. At the time of the accident, NMSIF provided auto and general liability coverage to the City and its employees. NMSIF's insurance policy included uninsured motorist benefits for the employees of the City. The auto and general liability coverage contained the following notice provision: "You must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim."

The City's Risk Management Department had a policy of not notifying insurers of an occurrence until the insured obtained legal counsel and made an uninsured motorist claim. In this particular case, there was no indication of a potential uninsured motorist claim because the accident was not the City's fault, there was no liability exposure, property damage was below the deductible, and the City was self-insured for workers' compensation. Also, the police report of the accident had indicated that Homrich was insured. On April 29, 1989, the City learned that Homrich was uninsured. Schroth did not realize he had an uninsured motorist claim until he was named as an involuntary plaintiff in the City's subrogation suit against Homrich. After consulting a lawyer, Schroth sent notice to NMSIF within sixty days of being informed Homrich was uninsured. Additionally, the City notified NMSIF of the claim on November 30, 1989. NMSIF did not invoke their reservation of rights when first notified of the claim.

### II.

The trial court found that no evidence was produced to support any claim of prejudice against NMSIF concerning the seven month interval between the knowledge of a possible claim of the City and the actual notice. Additionally, the trial court concluded that under the terms of the policy, the City should have given notice on April 29, 1989, when it became aware that Homrich was uninsured. The specific issues on appeal are whether adequate notice was provided to NMSIF under the terms of the policy, and whether NMSIF was prejudiced by any delay.

## III.

The purpose of uninsured motorist coverage is to place the injured policyholder in the same position as if the tortfeasor was insured. *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975) (quoting *Bartlett v. Nationwide Mut. Ins. Co.*, 33 Ohio St.2d 50, 294 N.E.2d 665, 666 (1973)). As with uninsured motorist coverage in general, compliance with conditions precedent to recovery is often liberally construed so as to effect the statutory purpose. 12A Mark S. Rhodes, *Couch Cyclopedia of Insurance Law* § 45:629 (2d.Ed.1981). Applying a liberal construction to the policy language, we agree with the trial court that notice should have been given on April 29, 1989, and not after the date of the accident.

The policy in question states: "You must see to it that we are notified as soon as practicable of an *'occurrence' which may result in a claim.*" (emphasis added). We find this sentence to be ambiguous as to what "occurrence" means and we will construe that ambiguity in favor of the insured. *Mountain States Mut. Casualty Co. v. Northeastern New Mexico Fair Ass'n*, 84 N.M. 779, 782, 508 P.2d 588, 591 (1973).

NMSIF contends that the "occurrence" was the auto accident and notice should have been given after the accident. We disagree. Notice requirements for uninsured motorist claims do not become operative until an insured reasonably believes such a claim exists. *Finney v. Farmers Ins. Co.*, 21 Wash.App. 601, 586 P.2d 519, 524 (1978), *aff'd*, 92 Wash.2d 748, 600 P.2d 1272 (1979) (en banc). Conditions only become operative when the insured, acting as a reasonably prudent person, believed he would have an uninsured motorist claim. *Thomas v. Grange Ins. Ass'n*, 5 Wash.App. 820, 490 P.2d 1316, 1319 (1971). The evidence established that the City did not give formal notice soon after the accident because they justifiably believed that no claim for uninsured motorist coverage would be made and that Schroth's only claim would be covered by workers' compensation. Furthermore, it was the policy of the City's Risk Management Department not to notify insurers of an occurrence until the insured obtained legal counsel and made an uninsured motorist claim. The insurance policy did not contain a requirement that every accident have a claim notice completed and sent to NMSIF. We agree with the trial court that the language of this policy gives the insured the discretion to decide what may or may not result in a claim.

The trial court's interpretation of the policy is bolstered by the meaning of the phrase "as soon as practicable." This term has been interpreted to mean a reasonable time, dependent upon the facts and circumstances of the case. 13A Mark S. Rhodes, *Couch Cyclopedia of Insurance Law* § 49:120 (2d.Ed.1982); *see also Motor State Ins. Co. v. Benton*, 35 Mich.App. 287, 192 N.W.2d 385, 387 (1971), *State Farm Mut. Auto Ins. Co. v. Burgess*, 474 So.2d 634, 636 (Ala.1985). We agree with the Tennessee Court of Appeals that "[t]he term 'practicable' not only means reasonable, but has the additional connotation of what might be termed common or 'horse' sense. Being practicable about a matter means eliminating the purely formal or useless acts which serve no real or valid purpose." *Transamerica Ins. Co. v. Parrott*, 531 S.W.2d 306, 314 (Tenn.Ct.App. 1975). In *Transamerica*, the court held that notice "as soon as practicable" is "from the time the insured knew or should have known that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer." *Id.* Because the accident was not the City's fault, there was no liability exposure, property damage was below the deductible, the City was self-insured for workers' compensation, and the police report incorrectly indicated that Homrich was insured, the City did not know, nor should it have known, that the accident might reasonably be expected to produce a claim. Thus, the language in the policy supports the trial court's finding that notice should have been given on April 29, 1989, and not after the date of the accident.

## IV.

 NMSIF also argues that they were prejudiced by the twenty-seven month delay of the City in giving notice. The City notified NMSIF of the claim on November 30, 1989. Because we agree with the trial court that notice should have been given on April 29, 1989—the date the City became aware that Homrich was uninsured—the delay at most was seven months.

"Whether the delay in giving notice is reasonable in view of all circumstances is a question of fact for determination by the trier of the facts." *Hartford Accident & Indem. Co. v. Day*, 359 F.2d 484, 486 (10th Cir.1964). The trial court did not address whether the seven month delay was reasonable. The court instead addressed whether NMSIF was prejudiced by the delay.

In *Roberts Oil Co. v. Transamerica Ins. Co.*, 113 N.M. 745, 833 P.2d 222 (1992), we recently held that "even when there has been a substantial and material breach of the insured's obligation and a resulting failure of a condition precedent to the insurer's liability, the breach and nonoccurrence of condition does not discharge the insurer absent a showing that the insurer has been substantially prejudiced." *Id.* at 750, 833 P.2d at 227. Here, the trial court found that "[n]o evidence was produced to support any claim of prejudice against [NMSIF] concerning the seven month interval between the knowledge of a possible claim of the City of Farmington, on April 29, 1989, and the actual notice of the claim on November 30, 1989." The court also found that any prejudice was a result of NMSIF's failure to invoke their reservation of rights when first notified by the City, and its failure to immediately investigate the case thereafter.

 We will not disturb findings made by the trial court that are supported by substantial evidence. *Elephant Butte Resort Marina, Inc. v. Wooldridge*, 102 N.M. 286, 291, 694 P.2d 1351, 1356 (1985). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 291, 694 P.2d at 1356. This court will indulge all reasonable inferences and resolve all disputed facts in favor of the trial court's findings. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967). In any event, historically, NMSIF would have handled this matter the same way even if notified sooner. Earlier notification would not have changed any of the basic facts. Additionally, NMSIF had no written rules or policy for reporting accidents. Thus, there is substantial evidence to support the trial court's finding that the delay did not result in any prejudice to NMSIF. Finally, because the trial court found no prejudice, there is no need for us to address whether or not the seven month delay was reasonable.

For the above reasons, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.