**PAJ, INC., d/b/a Prime Art & Jewel, Petitioner,**

v.

**THE HANOVER INSURANCE COMPANY, Respondent.**

No. 05–0849.

Supreme Court of Texas.

Argued Oct. 18, 2006.

Decided Jan. 11, 2008.

Rehearing Denied Feb. 15, 2008.

---

Baxter W. Banowsky, Scott D. Levine, Banowsky, Betz & Levine, P.C., Dallas TX, for Petitioner.

R. Lynn Fielder, Fisk & Fielder, P.C., Sidney H. Davis Jr., Touchstone Bernays Johnston Beall & Smith, LLP, Dallas TX, for Respondent.

Elizabeth Bloch, Brown McCarroll, L.L.P., Austin, Frederick B. Wulff, Hughes & Luce LLP, Dallas, Douglas Alexander, Alexander Dubose Jones & Townsend, LLP, Austin, TX, for Amicus Curiae.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice BRISTER, Justice MEDINA, and Justice GREEN joined.

In this case, we must decide whether an insured's failure to timely notify its insurer of a claim defeats coverage under the policy if the insurer was not prejudiced by the delay. We hold, as we did in *Hernandez v. Gulf Group Lloyds,* that an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation. 875 S.W.2d 691, 692 (Tex.1994). Accordingly, we reverse the court of appeals' judgment, render judgment that the insurer could not deny coverage because of untimely notice, and remand the remaining issues to the trial court.

## I.

PAJ, Inc., a jewelry manufacturer and distributor, purchased a commercial general liability ("CGL") policy from Hanover Insurance Company that covered, among other things, liability for advertising injury. The policy required PAJ to notify Hanover of any claim or suit brought against PAJ "as soon as practicable." In 1998, Yurman Designs, Inc. demanded that PAJ cease marketing a particular jewelry line, and a month later sued PAJ for copyright infringement. Initially unaware that the CGL policy covered the dispute, PAJ did not notify Hanover of the suit until four to six months after litigation commenced.

PAJ brought this suit against Hanover seeking a declaration that Hanover was contractually obligated to defend and indemnify PAJ in the copyright suit, and asserting several extracontractual claims. The parties stipulated that PAJ failed to notify Hanover of the Yurman claim "as soon as practicable" and that Hanover was not prejudiced by the untimely notice. Both parties moved for summary judgment on the notice issue based on these undisputed facts. The trial court granted Hanover's motion and denied PAJ's, holding that Hanover was not required to dem-

onstrate prejudice to avoid coverage under the policy. The court of appeals affirmed. 170 S.W.3d 258, 259. We granted PAJ's petition for review to determine the effect on coverage when an insured fails to timely notify its insurer of a claim but the insurer suffers no harm as a result.

## II.

■ The Hanover policies issued to PAJ provide coverage for "advertising injury," which the policy defines to include injury arising out of copyright infringement. The policy contains a prompt-notice provision that requires PAJ to notify Hanover of an occurrence or an offense that may result in a claim "as soon as practicable." The parties dispute whether the policy's prompt-notice requirement constitutes a condition precedent or merely a covenant. Hanover contends the policy language creates a condition precedent, the failure of which defeats coverage under the policy irrespective of prejudice to the insurer. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). PAJ, on the other hand, contends the prompt-notice language creates a covenant, the breach of which excuses performance only if the breach is "material." *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex.1992). PAJ further asserts that even if the policy language creates a condition precedent to coverage, Texas law nonetheless requires an insurer to demonstrate prejudice before it may avoid coverage based on untimely notice. We agree with PAJ that only a material breach of the timely notice provision will excuse Hanover's performance under the policy.

## III.

Hanover pins its analysis on our decision in *Members Mutual Insurance Co. v. Cutaia*, 476 S.W.2d 278 (Tex.1972), and that is where we will begin. The policy at issue in *Cutaia* required the insured to forward any suit papers immediately to the insurer and provided that "no action shall lie against the [insurer] unless, *as a condition precedent thereto,* there shall have been full compliance with all of the terms of this policy." *Id.* at 278 (emphasis added). The insured failed to forward the suit papers to his insurer until five months after the occurrence in question. *Id.* at 278–79. Stipulating that it had suffered no harm, the insurer denied liability, contending a condition precedent to coverage had not been met. *Id.* at 279. We agreed that the insured's failure to timely comply with the policy's forwarding condition precluded the insurer's liability whether or not prejudice resulted. *Id.* at 281. But we emphasized "the apparent injustice which results in this particular case," and deferred consideration of the issue to the State Board of Insurance or the Legislature. *Id.*

The State Board of Insurance responded the very next year by issuing Board Order 23080, which requires a mandatory endorsement to all Texas CGL policies that precludes forfeiture of coverage for an insured's failure to comply with notice or forwarding conditions unless the insurer is prejudiced thereby. *See* State Board of Insurance, *Revision of Texas Standard Provision For General Liability Policies—Amendatory Endorsement–Notice,* Order No. 23080 (Mar. 13, 1973).

The endorsement provides:

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

*Id.* It is important to note that, at the time the State Board of Insurance created this endorsement, there was no standard coverage for advertising injury.[1]

Two decades after Board Order 23080 became effective, we decided *Hernandez.* 875 S.W.2d 691. There, the insured sought recovery under the uninsured/underinsured motorist provision of an automobile policy. The insurer denied liability because the insured had settled the underlying claim without the insurer's consent in violation of the policy's "settlement without consent" exclusion. Applying "fundamental principle[s] of contract law," we held that when one party to a contract commits a material breach, the other party's performance is excused. *Id.* at 692. In determining the materiality of a breach, we said, courts must consider, among other things, "the extent to which the non-breaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Id.* at 693 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981)). Without distinguishing between covenants and conditions or classifying the exclusion as one or the other, we concluded that the insured's breach of the settlement-without-consent provision was immaterial and thus the insurer could not avoid liability under the policy. *Id.* at 694. Notably, we recognized that "[m]ost other jurisdictions presented with this issue have likewise imposed a prejudice requirement, primarily on public policy grounds."[2] *Id.* at 693 n. 4. The sole dis-

1. The Insurance Services Office, Inc. ("ISO") is the industry organization responsible for issuing nearly all standard CGL forms. *See* Ernest Martin, Jr., et al., *Insurance Coverage for the New Breed of Internet–Related Trademark Infringement Claims,* 54 SMU L. REV. 1973, 1984 (2001). The standard 1973 ISO form provided coverage for only "bodily injury" and "property damage," and did not itself cover "advertising injury." *Id.* at 1988. Not until 1981 did the ISO issue an "advertising injury" Broad Form Comprehensive General Liability Endorsement that could be purchased as a supplemental endorsement to the 1973 form. *Id.* at 1988. In 1986, sweeping changes were made to the ISO CGL policy form, and "advertising injury" coverage was incorporated into the body of the form. *Id.* at 1992. Since October 2000, the ISO version of the mandatory Texas Department of Insurance endorsement has included a provision that requires a showing of prejudice for notice defects in personal and advertising injury cases to avoid liability under the policy.

2. Like our treatment of the exclusion in *Hernandez,* the courts in many of the cases we cited made no attempt to classify the policy provisions as either covenants or conditions, nor did they even employ those terms. *See Hernandez,* 875 S.W.2d at 693 n. 4. Those courts that did focused principally on the issue of prejudice regardless of how the provision was classified. *See MacInnis v. Aetna Life & Cas. Co.,* 403 Mass. 220, 526 N.E.2d 1255, 1257–58 (1988) (noting the insurer's argument that compliance with the consent-to-settlement clause was a condition precedent to recovery but holding that the insurer must demonstrate material prejudice in order to rely on that violation as an affirmative defense); *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 378 S.E.2d 21, 26 (1989) (holding that conditions precedent concerning timely notice will not be given greater scope than required to fulfill their purpose, which is to protect the insurer's ability to defend by preserving its ability to fully investigate the accident); *Newark Ins. Co. v. Ezell,* 520 S.W.2d 318, 321 (Ky.1975) (stating that an insurer cannot rely upon an insured's noncompliance with a policy condition to avoid coverage if the insurer has sustained no prejudice because "to enforce the 'consent' clause in these circumstances would be to let form prevail over substance"); *Thompson v. Am. States Ins. Co.,* 687 F.Supp. 559, 564 (M.D.Ala.1988) (noting that a consent-to-settlement clause created a condition to coverage but holding that breach of the clause must prejudice the insurer to relieve it of liability); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 852 (Iowa 1988) (holding insurer had to demonstrate actual prejudice from insured's noncompliance with settlement-without-consent clause rather than allow complete destruction of the insured's right to recover); *Tegtmeyer v. Snellen,* 791 S.W.2d 737, 740 (Mo.Ct.App.1990)(holding insurer must show

senting justice in *Hernandez* posited, as Hanover does here, that *Cutaia* likewise involved a coverage condition and thus precluded liability irrespective of harm. *Id.* at 694 (ENOCH, J., dissenting). The Court apparently rejected this position.

Since our decision in *Hernandez,* courts and several major treatises have acknowledged Texas as a state that has adopted a notice-prejudice rule. *See, e.g., Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.,* 415 F.3d 474, 480 (5th Cir.2005) (relying on *Hernandez* and stating that Texas requires a showing of prejudice for insurer to avoid coverage because of untimely notice under an occurrence policy, even for types of insurance not covered by Board Order 23080); *Booking v. Gen. Star Mgmt. Co.,* 254 F.3d 414 (2d Cir.2001) (citing *Hernandez* and stating Texas courts allow an insurer to deny coverage only for a material breach of its insurance contract); *Hanson Prod. Co. v. Ams. Ins. Co.,* 108 F.3d 627, 630–31· (5th Cir.1997) (same); ERIC MILLS HOLMES, 22 HOLMES' APPLEMAN ON INSURANCE LAW AND PRACTICE § 139.4 (2d ed.2003). In *Hanson,* for example, the Fifth Circuit read *Hernandez* to require a demonstration of harm for an insurer to avoid its coverage obligation when the insured fails to comply with a policy's prompt-notice provision. 108 F.3d at 630. Summarizing our holding as "a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not," the Fifth Circuit concluded this "fundamental principle of contract law" applied with equal or greater force to notice clauses:

> prejudice to escape liability under its policy for insured's breach of settlement-without-consent provision).

**3.** *See generally* BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 4.02(c)(2), (3d ed.2006), (citing cases). *See, e.g., Tush v. Pharr,* 68 P.3d 1239, 1250

If anything, we believe that the failure to give notice of a claim poses a smaller risk of prejudice than failure to obtain consent to a settlement. In many instances of untimely notice of a claim, the insurer is not prejudiced at ·all, and ultimately may not face any coverage obligation. Conversely, in many if not most cases where an insured settles a case ·without the insurer's consent, the insurer faces at least some liability. If the Texas Supreme Court does not presume prejudice in a settlement-without-consent case, we are persuaded that it would not presume prejudice in a failure-of-notice case.

*Id.* at 631. The Fifth Circuit noted "a modern trend in favor of requiring proof of prejudice" in this context and emphasized that in *Hernandez,* our Court considered the law of other jurisdictions and that our analysis "is entirely consistent with [this modern trend]." *Id.; see St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.,* 383 F.Supp.2d 891, 901 (N.D.Tex.2003) (rejecting traditional view that an insurer need not prove prejudice to prevail in a late-notice case as inconsistent with *Hernandez* and the modern trend that considers prejudice to an insurer a relevant factor in determining whether to enforce a condition precedent to insurance coverage); *see also Prince George's County v. Local Gov't Ins. Trust,* 388 Md. 162, 879 A.2d 81, 94 n. 9 (2005) (counting thirty-eight states, including Texas, as having adopted a notice-prejudice rule in some form, with only six states and the District of Columbia identified as adhering to the traditional rule).[3]

(Alaska 2003); *Holt v. Utica Mut. Ins. Co.,* 157 Ariz. 477, 759 P.2d 623, 624 (1988); *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1107 (1978); *Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223, 230 (Colo.2001); *Aetna Cas. & Sur. Co. v. Murphy,* 206 Conn. 409, 538 A.2d 219, 223 (1988); *Nationwide Mut. Ins.*

The dissent today attempts to distinguish *Hernandez* by characterizing the settlement-without-consent clause at issue in that case as a covenant rather than a condition, even though in *Hernandez* we made no distinction between the two. They arrive at that conclusion only through reasoning, backwards, that because we required a showing of prejudice in *Hernandez*, the policy language at issue must have been a covenant. In truth, the policy language we construed in *Hernandez* is indistinguishable from that presented here. As under PAJ's policy, the language before the Court in *Hernandez* provided:

> This insurance *does not apply:* a) to bodily injury or property damage with respect to which the insured, . . . without written consent of the company, makes any settlement with any person . . . who may be legally liable therefor.

875 S.W.2d at 694 (policy language quoted by ENOCH, J., dissenting). The dissenting justice in *Hernandez*, like the dissenting justices today, saw this language as rather clearly indicating a condition to coverage. *See id.* ("[T]his case is not about a breach of contract. This case is about coverage."). Nevertheless, we made no distinction between the two in deciding that the insurer had to show prejudice before it could avoid its coverage obligation.

The fact that *Hernandez* involved a policy exclusion rather than a policy provision does not supply a valid ground for distinguishing its application here. Exclusions and conditions are in effect two sides of the same coin; exclusions avoid coverage *if* the insured does something, and conditions avoid coverage *unless* an insured does something. The dissent's construction would have the absurd consequence that identical policy language creates a condition precedent as to one type of coverage (advertising injury) but a covenant as to the other (bodily injury and property damage). We have said unequivocally that

Co. v. Starr, 575 A.2d 1083, 1088 (Del.1990); Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985); Standard Oil Co. v. Hawaiian Ins. & Guar. Co., Ltd., 65 Haw. 521, 654 P.2d 1345, 1348 n. 4 (1982); Miller v. Dilts, 463 N.E.2d 257, 261 (Ind.1984); Grinnell Mut. Reinsurance Co. v. Jungling, 654 N.W.2d 530, 541–42 (Iowa 2002); Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co., 275 Kan. 698, 71 P.3d 1097, 1139 (2003); Jones v. Bituminous Cas. Corp., 821 S.W.2d 798, 801 (Ky.1991); Lanzo v. State Farm Mut. Auto. Ins. Co., 524 A.2d 47, 50 (Me.1987); Sherwood Brands, Inc. v. Hartford Accident & Indem. Co., 347 Md. 32, 698 A.2d 1078, 1082–83 (1997); Goodman v. Am. Cas. Co., 419 Mass. 138, 643 N.E.2d 432, 434 (1994); Koski v. Allstate Ins. Co., 456 Mich. 439, 572 N.W.2d 636, 639 (1998); Lawler v. Gov't Employees Ins. Co., 569 So.2d 1151, 1159-60 (Miss. 1990); Johnston v. Sweany, 68 S.W.3d 398, 402 (Mo.2002); State Farm Mut. Auto. Ins. Co. v. Murnion, 439 F.2d 945, 947 (9th Cir. 1971) (applying Montana law); Mefferd v. Sieler and Co., Inc., 267 Neb. 532, 676 N.W.2d 22, 26 (2004); Wilson v. Progressive Northern Ins. Co., 151 N.H. 782, 868 A.2d

268, 271 (2005); Pfizer, Inc. v. Employers Ins., 154 N.J. 187, 712 A.2d 634, 644 (1998); Schroth v. N.M. Self–Insurer's Fund, 113 N.M. 708, 832 P.2d 399, 402 (1992); Great Am. Ins. Co. v. C.G. Tate Constr. Co., 315 N.C. 714, 340 S.E.2d 743, 746 (1986); Finstad v. Steiger Tractor, Inc., 301 N.W.2d 392, 398 (N.D. 1981); Ferrando v. Auto–Owners Mut. Ins. Co., 98 Ohio St.3d 186, 781 N.E.2d 927, 946 (2002); Indep. Sch. Dist. No. 1 v. Jackson, 608 P.2d 1153, 1155 (Okla.1980); Carl v. Oregon Auto. Ins. Co., 141 Or.App. 515, 918 P.2d 861, 863 (1996); Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A.2d 193, 197 (1977); Avco Corp. v. Aetna Cas. & Sur. Co., 679 A.2d 323, 328–29 (R.I.1996); Vt. Mut. Ins. Co. v. Singleton, 316 S.C. 5, 446 S.E.2d 417, 421 (1994); Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 813 (Tenn.2000); FDIC v. Oldenburg, 34 F.3d 1529, 1546—47 (10th Cir.1994) (applying Utah law); Coop. Fire Ins. Ass'n of Vt. v. White Caps, Inc., 166 Vt. 355, 694 A.2d 34, 35 (1997); Benham v. Wright, 94 Wash. App. 875, 973 P.2d 1088, 1092 (1999); Colonial Ins. Co. v. Barrett, 208 W.Va. 706, 542 S.E.2d 869, 874 (2000); Neff v. Pierzina, 245 Wis.2d 285, 629 N.W.2d 177, 185 (2001).

"when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition." *Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990).

■ Moreover, we question the dissent's fundamental premise that the timely notice provision before us creates a condition precedent rather than a covenant. The policy language in *Cutaia* specifically provided that "no action shall lie against the company unless, *as a condition precedent thereto,* the insured shall have fully complied with all the terms of this policy." 476 S.W.2d at 278 (emphasis added). The "as a condition precedent" language was deleted from the standard CGL policy following our decision in *Cutaia,* and it does not appear in PAJ's policy. While Section IV is entitled "Commercial General Liability *Conditions,*" the notice-of-claim requirement appears in a subsection entitled "*Duties* in the Event of Occurrence, Claim or Suit" and speaks in terms of what the insured "must do" if a claim is made against it, language that more closely resembles a covenant. *See* 8 CATHERINE M.A. McCAULIFF, CORBIN ON CONTRACTS § 30.12 (Joseph M. Perillo ed., 1999); *Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 376 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.). Conditions are not favored in the law; thus, when another reasonable reading that would avoid a forfeiture is available, we must construe contract language as a covenant rather than a condition. *See Criswell,* 792 S.W.2d at 948; *see also ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.,* 185 S.W.3d 440, 444 (Tex. 2005).

In addition, the timely notice provision was not an essential part of the bargained-for exchange under PAJ's occurrence-based policy. The Fifth Circuit, applying Texas insurance law, aptly describes the critical distinction between "occurrence" polices and "claims-made" policies as follows:

> In the case of an "occurrence" policy, any notice requirement is subsidiary to the event that triggers coverage. Courts have not permitted insurance companies to deny coverage on the basis of untimely notice under an "occurrence" policy unless the company shows actual prejudice from the delay.

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658 (5th Cir.1999) (citations omitted); *see also FDIC v. Booth,* 82 F.3d 670, 678 (5th Cir. 1996); *Centrum G.S.,* 383 F.Supp.2d at 900–01; *Hirsch v. Tex. Lawyers' Ins. Exch.,* 808 S.W.2d 561, 563 (Tex.App.-El Paso 1991, writ denied). The dissent, by focusing on the type of coverage rather than the type of *policy,* entirely disregards this important distinction.

Finally, and perhaps most disturbingly, the dissent's analysis of the policy language would impose draconian consequences for even *de minimis* deviations from the duties the policy places on insureds. The policy in this case requires, in the same section at issue, not only notice of suit "as soon as practicable," but also that PAJ "immediately send . . . copies of any demands, summonses or legal papers." Thus, under the dissent's construction, an insured's failure to promptly forward a deposition notice or a certificate of conference would work a forfeiture of coverage, even when the insurer is not at all harmed. This is precisely the result that Board Order 23080 attempted to avoid and we rejected in *Hernandez.*

\* \* \*

■ We hold that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was

not prejudiced by the delay. Accordingly, we reverse the court of appeals' judgment, render judgment that the insurer could not deny coverage because of untimely notice, and remand the remaining issues to the trial court.

Justice WILLETT filed a dissenting opinion, in which Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON joined.

Justice WILLETT, joined by Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON, dissenting.

I respectfully dissent. I would follow *Members Mutual Insurance Co. v. Cutaia*[1] and hold that a policy's unambiguous notice-of-suit language, a condition precedent to coverage, constitutes a defense to liability and must be enforced as written, unless positive law dictates otherwise.[2] Because positive law does not dictate otherwise, I would affirm the court of appeals.

## I. Discussion

PAJ argues that under *Hernandez v. Gulf Group Lloyds*[3] and *Harwell v. State Farm Mutual Automobile Insurance Co.*,[4] the policy's notice provisions are covenants, not conditions precedent to coverage, and therefore Hanover must demonstrate prejudice before denying coverage for untimely notice. I disagree. Settled Texas precedent construes notice provisions as conditions precedent that impose

no prejudice requirement, unless the policy's literal text, a statute, or an agency directive demands it.

## A. The Timely Notice Provision Is a Condition Precedent, Not a Covenant

The parties dispute whether the policy's prompt-notice language constitutes a condition precedent (as Hanover argues), the failure of which defeats coverage,[5] or a covenant (as PAJ argues), the breach of which, if immaterial, does not defeat coverage.[6] PAJ concedes that "[f]or years, Texas courts have held that timely notice of suit provisions in liability insurance policies [are] conditions to coverage" and that a "long line of Texas cases hold[s] that the notice requirements of policies similar to the Policies [in this case] are conditions precedent to liability," but contends that those cases involved *"materially different"* policy language.

This Court has indeed repeatedly described insurance policy notice provisions as conditions precedent to coverage.[7] In 1972, we held in *Cutaia* that when a notice provision requiring the immediate forwarding of suit papers is breached, "liability on the claim [was] discharged, and harm (or lack of it) resulting from the breach [is] immaterial."[8] The policy in *Cutaia* provided that " 'no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully com-

---

1. 476 S.W.2d 278, 279 (Tex.1972).

2. *Id.* at 281.

3. 875 S.W.2d 691 (Tex.1994).

4. 896 S.W.2d 170 (Tex.1995).

5. *Klein v. Century Lloyds,* 154 Tex. 160, 275 S.W.2d 95, 96 (1955).

6. *See Hernandez,* 875 S.W.2d at 692.

7. *Harwell,* 896 S.W.2d at 173–74; *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d 164, 165 (Tex.1993); *Weaver v. Hartford Accident & Indem. Co.,* 570 S.W.2d 367, 369 (Tex.1978); *Dairyland County Mut. Ins. Co. v. Roman,* 498 S.W.2d 154, 157 (Tex.1973); *Cutaia,* 476 S.W.2d at 278; *Klein,* 275 S.W.2d at 96.

8. *Cutaia,* 476 S.W.2d at 279, 281 (discussing *New Amsterdam Cas. Co. v. Hamblen,* 144 Tex. 306, 190 S.W.2d 56 (1945)); *see also Klein,* 275 S.W.2d at 96.

plied with all the terms of this policy,'" including the notice requirement in issue.[9]

PAJ insists the notice requirement in Hanover's CGL policy is necessarily a covenant because it omits the "as a condition precedent thereto" clause present in the *Cutaia* policy. I disagree. "Magic words" are not controlling; labeling something a "condition precedent" does not make it so, and the absence of such a label does not make it not so. Whether a notice provision constitutes a condition precedent turns on what the provision actually does, its nature and purpose, not merely on what it is called or because it appears under a heading, as here, that includes the word "Conditions." "A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement."[10] A condition precedent to an obligation to perform is an act or event that "must occur before there is a right to immediate performance and before there is a breach of contractual duty"[11]; failure to comply with such a condition forfeits coverage and releases the insurer from any duty to defend or indemnify.[12] By contrast, a covenant is "an agreement to act or refrain from acting in a certain way,"[13] and only a material breach will forfeit coverage.[14] While no mantra or magic words are necessary, an intent to create a condition precedent is sometimes indicated by the use of conditional terms such as "if," "provided that," "on condition that," or some similar limiting phrase that conditions performance.[15] As the Court has explained, such terms "usually connote an intent for a condition rather than a promise."[16]

The notice provision at issue is a condition precedent, as coverage is expressly conditioned on compliance with the notice requirement. Section IV of the policy, entitled "Commercial General Liability Conditions," contains a list of "Duties In The Event Of Occurrence, Offense, Claim Or Suit," one of which states: "If a claim is made or 'suit' is brought against any insured, you must .... [n]otify us as soon as practicable." Section IV also specifies that "[n]o person or organization has a right under this Coverage Part ... to sue us on this Coverage Part *unless all of its terms have been fully complied with* " (emphasis added). The prompt-notice requirement, expressly identified in the policy as a condition and, more importantly, providing that no suit may take place absent full compliance, is plainly a condition that precedes the insurer's obligations to perform under the policy.

PAJ's reliance on *Hernandez* is misplaced. *Hernandez* involved an insured's breach of a settlement-without-consent exclusion in an automobile policy, which said that the insurance did not apply to "bodily injury or property damage with respect to which the insured ... shall, without written consent of the company, make any settlement with any person or organization

---

9.  *Cutaia,* 476 S.W.2d at 278.

10.  *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976).

11.  *Id.*

12.  *See, e.g., Cutaia,* 476 S.W.2d at 279.

13.  *Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 376 (Tex.App.-Dallas 1980, writ ref'd n.r.e.);

*see also Reinert v. Lawson,* 113 S.W.2d 293, 295 (Tex.Civ.App.-Waco 1938, no writ).

14.  *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692–93 (Tex.1994).

15.  *Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990); *see also Hohenberg Bros.,* 537 S.W.2d at 3.

16.  *Hohenberg Bros.,* 537 S.W.2d at 3.

who may be legally liable therefor." [17] Rather than treat the exclusion as a condition precedent, the Court viewed it as a covenant, an ordinary contractual obligation, the performance of which was excused only if the breach were material.[18] As such, we found it "unenforceable absent a showing by the insurer that it has been prejudiced by an insured's failure to obtain consent before settling." [19] The Court recognized a prejudice requirement in *Hernandez* consistent with the basic contract law principle that one party's breach of a covenant must be material in order to excuse performance by the other party.[20]

Hernandez's materiality-of-breach analysis is inapposite here because PAJ did not breach a covenant. Rather, it failed to comply with a condition precedent, a strict requirement that precedes any obligation on the part of Hanover under the policy. As noted above, and as PAJ concedes, the Court has long and consistently treated notice requirements as conditions precedent to coverage rather than covenants.[21] Such treatment flows naturally from the fact that performance of an obligation to defend or indemnify cannot ordinarily be expected of an insurer until it first receives notice of a claim's existence. Breach of a settlement-without-consent exclusion, on the other hand, might occur long after the insurer has learned of a suit and assumed its duty to defend. Hence, I agree with the court of appeals in this case in recognizing "a significant difference between a policy condition (performance of which is necessary to trigger any obligation for cov-

erage) and a policy exclusion (which operates only after the obligation for coverage is in place)." [22] Further, treating every breach of a settlement-without-consent clause as automatically ending the insurer's obligations not only makes little sense from a timing standpoint but also disserves the interests of both parties to the insurance contract. It is easy to conceive of instances where a resourceful insured succeeds through its own efforts in obtaining a favorable third-party settlement that the insurer is only too happy to fund. Considering the prejudice, if any, to the insurer of a breach of the consent requirement is therefore warranted. On the other hand, it is hard to conceive of an instance where a failure to give notice of a suit or claim at the outset of litigation would ever operate to the insurer's benefit. In short, *Hernandez* is distinguishable.

**B. A Late–Notice Defense Should Require No Showing of Prejudice Unless the Policy or Positive Law Specifically Provides Otherwise**

PAJ's reliance on our 1995 decision in *Harwell* likewise falls short. In *Harwell*, prejudice was expressly required by the policy itself: "If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy." [23] Given this unambiguous requirement, we enforced the contract's literal text and examined whether the insurer had in fact demonstrated actual prejudice.[24] PAJ's policy, by contrast,

---

17. 875 S.W.2d at 692 n. 1.

18. *Id.* at 692–93.

19. *Id.* at 692.

20. *See id.*

21. *See supra* note 7 and accompanying text.

22. 170 S.W.3d at 263.

23. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995).

24. *Id.* at 174 (citing *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d 164, 165 (Tex.1993)). *Cruz,* like *Hernandez,* involved an insurance policy with a notice provision that required a showing of prejudice before the insurer could escape coverage. The policy in *Cruz* stated: "unless the company is *prejudiced* by the in-

does not require the insurer to show prejudice with respect to advertising injury claims.

In *Cutaia*, we held that a late-notice defense requires no showing of prejudice, refusing to "insert a provision that violations of conditions precedent will be excused if no harm results from their violation."[25] The Board of Insurance (now the Texas Department of Insurance (TDI)) responded the following year, issuing two Board orders mandating a prejudice requirement for bodily injury and property damage coverage in automobile and general liability policies:

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.[26]

PAJ casts this 1973 Board action as a "regulatory rejection" of *Cutaia's* no-prejudice rule. As concerns the dispositive issue before us, I disagree. This Board-mandated policy language, while clearly applicable to the automobile policy in *Harwell*, was not an across-the-board abrogation of *Cutaia's* no-prejudice rule; by its terms, the Board's endorsement reaches only certain lines of insurance and a defined subset of claims for bodily injury and property damage.

PAJ's policy provided for three kinds of coverage: Coverage A, for bodily injury and property damage; Coverage B, for personal and advertising injury; and Coverage C, for medical payments. The agency's required endorsement is targeted solely at Coverage A. The endorsement imposes no prejudice requirement for any other types of coverages.

My text-based construction of the policy is consistent with the principle of *expressio unius est exclusio alterius*, meaning that the naming of one implies the exclusion of others.[27] This maxim, while not conclusive, is useful and applies perfectly here, where TDI's prejudice requirement, by its terms, covers only a specified subset of claims. My construction also honors stare decisis as explained recently in *Fiess v. State Farm Lloyds*.[28] In *Fiess*, the Court discussed one of our prior decisions and observed that if TDI disputed our construction of the insurance policy in that case, "it is strange that insurance regulators did nothing to change the policy for a quarter century."[29] In the instant case, the Board acted following *Cutaia*, but in a circumscribed manner.

---

sured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice ... shall not bar liability under this policy." 883 S.W.2d at 165–66 n. 3.

25. *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 281 (Tex.1972).

26. State Bd. of Ins., *Revision of Texas Standard Provision for Automobile Policies Editions of April 1, 1955 and October 1, 1966—Amendatory Endorsement—Notice*, Order No. 22582 (Jan. 26, 1973), *available at* http://www.tdi.state.tx.us/commercial/pcck22582.

html; State Bd. of Ins., *Revision of Texas Standard Provision for General Liability Policies—Amendatory Endorsement–Notice*, Order No. 23080 (Mar. 13, 1973), *available at* http://www.tdi.state.tx.us/commercial/pcck23080.html.

27. *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987).

28. 202 S.W.3d 744 (Tex.2006).

29. *Id.* at 749–50.

The Court points out that the prejudice requirement TDI imposed in 1973 predated the availability of CGL coverage for advertising injury. True enough, but as the Court also acknowledges, such coverage has now been available through standard CGL policies for nearly three decades during which TDI declined to broaden its 1973 order even as new coverages, like advertising injury, were added to the standard CGL policy. Given this lengthy inaction by the agency charged with mandating changes in policy forms, *Fiess* counsels us to "decline the invitation to overrule" our earlier precedent.[30] If anything, the argument for deference to state regulators in the instant case is even stronger than it was in *Cutaia*. The Board responded swiftly following *Cutaia*, to be sure, but also surgically, overriding *Cutaia* as to some coverages but not others. The implication from this targeted response followed by decades of subsequent executive and legislative inaction is plain: Hanover must show prejudice from late notice of bodily injury and property damage claims but not from late notice of advertising injury claims.

I would reaffirm *Cutaia's* recognition that the Legislature and the state agency overseeing the insurance industry are better suited to decide whether an insurer must show prejudice to deny coverage based on late notice. TDI and legislators are free to supplant *Cutaia's* no-prejudice rule with a more liberal notice-prejudice rule if they believe, on public policy grounds, that the latter is preferable. I would not fault them for doing so. But when interpreting text—whether a contract, regulatory edict, statute, or constitution—formalism matters, and key to formalism is consistency in entrusting policy matters to policymakers.

In any event, I find it understandable that an insurer would insist on a strict notice requirement. An insured's failure to provide prompt notice of a suit or claim to an insurer, who has the resources and experience to handle such claims, can obviously work a substantial hardship on both the insurer and the insured. The insurer understandably wishes to discourage late notice and to avoid ancillary litigation devoted to whether or not it was prejudiced by a failure to provide prompt notice; litigation could have the effect of raising premiums on all insured parties, thus forcing punctual insured parties to subsidize those who flout the policy's notice requirements.

Regardless of which side makes the superior public policy argument as to what an insurance policy *should* provide, I would decline to insert nonexistent language into the parties' agreement. The Court is construing a contract, not editing it, and just six months ago, in *Fortis Benefits v. Cantu*, this Court unanimously stressed that "contract rights generally arise from contract language; they do not derive their validity from principles of equity but directly from the parties' agreement."[31] *Fortis Benefits* directs courts in contractual interpretation cases to follow a "modest, text-based approach" anchored in the parties' agreed contract,[32] rather than imposing external, judge-made rules. Indeed, *Fortis Benefits* cited *Cutaia*, which should control today, for the sound principle that balancing policy concerns is best left to nonjudicial bodies.[33] The Court affirmed that view last year in *Fiess* when it concluded: "If the political branches of Texas government decide that mold should

**30.** *Id.* at 750.

**31.** 234 S.W.3d 642, 647 (Tex.2007).

**32.** *Id.* at 649.

**33.** *Id.* at 649–50.

be covered in Texas insurance policies, they have tools at their disposal to do so; Texas courts must stick to what those policies say. . . ." [34] *Cutaia's* core holding remains valid. "[O]n balance it is better policy for the contracts of insurance to be changed by the public body charged with their supervision . . . or by the Legislature, rather than for this Court to insert a provision that violations of conditions precedent will be excused if no harm results from their violation." [35]

In a post-submission brief, Hanover points out that since October 2000 a "Texas Changes" endorsement, designated endorsement "CG 01 03" and published by the Insurance Services Office (ISO), has included a prejudice requirement for personal and advertising injury claims as well as bodily injury and property damage claims. Hanover alternatively describes this endorsement as "approved" or "required" by TDI. Under current and prior law, TDI has been authorized to approve standardized policy forms.[36] The ISO is "a national organization that publishes standard policy forms." [37] The record and briefing before us are inconclusive as to whether TDI has merely approved the use of this endorsement as one which *may* be used in Texas CGL policies or has in effect

required the use of the endorsement in *all* CGL policies by approving this form or otherwise mandating its use through some other mechanism. Even if TDI now mandates a prejudice requirement for advertising injury claims in all Texas CGL policies, that requirement, as Hanover notes, was not imposed until some time in 2000 at the earliest and does not apply to the policy in the pending case. The parties stipulated that the Hanover policies covered the period from July 1993 through June 1999. It is undisputed that the ISO endorsement used in the Hanover policy in issue did not contain a prejudice requirement for advertising injury claims. For the reasons described above, I would not impose a prejudice requirement where the policy contains no such language and where TDI did not require such an endorsement at the time the policy was in effect—even if TDI has since changed the endorsement language that must be used.

Today the Court treats *Cutaia* as a dead letter, overruled by *Hernandez*, reasoning that the Court in *Hernandez* declined to draw any distinction between covenants and conditions and "apparently rejected" *Cutaia's* holding that failure to comply with a coverage condition precluded liability irrespective of harm.[38] I disagree.

---

**34.** *Fiess,* 202 S.W.3d at 753.

**35.** *Members Mut. Ins. Co. v. Cutaia,* 476 S.W.2d 278, 281 (Tex.1972).

**36.** Under current law, an insurer offering a CGL policy must use forms filed with and approved by TDI, Tex. Ins.Code §§ 2301.003(b)(3), 2301.006, subject to an exemption for certain large risks, § 2301.004. TDI "may adopt standard insurance policy forms . . . that an insurer may use instead of the insurer's own forms." § 2301.008. "The Commissioner may approve the use of policy forms and endorsements adopted by a national organization of insurance companies or a similar organization, if such forms or endorsements are filed with and are approved

by the commissioner in accordance with this article." Tex. Ins.Code art. 5.35(c) (Vernon Supp.1997). Similarly, under prior law applicable to CGL policies, insurers were required to file and obtain approval of policy forms with TDI, which was also authorized to "promulgate standard insurance policy forms." *See id.* art. 5.13–2, § § 2(a)(1), 8(a), 8(e), *repealed by* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18(d), 2005 Tex. Gen. Laws 1752, 2186–87.

**37.** *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 558 (Tex.2003) (Phillips, C.J., dissenting).

**38.** 243 S.W.3d at 634.

This Court has never expressly equated covenants with conditions or abolished the sometimes fine (but sometimes significant) distinction between them; Texas law has traditionally viewed covenants and conditions differently. *Hernandez* may not have classified the settlement-without-consent exclusion in that case as one or the other, but other post-*Hernandez* decisions from this Court have certainly done so. Indeed, just one year after *Hernandez*, in *Harwell*, we retained the distinction, deeming the prompt-notice requirement in that case a condition precedent and not a covenant.[39]

Put simply, *Hernandez* concerned a policy exclusion—not a policy condition—and this Court has restated the distinction repeatedly since *Hernandez* was decided.[40] In any event, *Hernandez* did not overrule or modify *Cutaia*, expressly or by implication; the *Hernandez* majority never even *mentions Cutaia*. Nor has any subsequent case from this Court, until today, limited *Cutaia* or remotely criticized it. For the reasons discussed above,[41] *Cutaia* and *Hernandez* can be reconciled, with today's notice case falling squarely under *Cutaia*, a case this Court recently cited and unanimously reaffirmed for the core teaching regarding policy intervention/abstention.[42]

The Court finds my reading of the policy unreasonable because "identical policy language creates a condition precedent as to one type of coverage (advertising injury), but a covenant as to the other (bodily injury and property damage)."[43] I think my reading of the policy is exactly what is expected when a national insurance company uses a standard CGL form but modifies it only to the extent necessary to comply with the law of the jurisdiction where the policy is sold, in this case Texas. The policy generally provides that notice of an occurrence or claim is a condition precedent to coverage and that "[n]o person ... has a right ... [t]o sue" the insurer absent compliance with this requirement, as discussed more fully above, but modifies these standard provisions as needed to comply with Texas law. Hence, the policy includes an endorsement, titled "Texas Changes—Conditions Requiring Notice" and providing that prejudice must be shown to deny coverage "[w]ith regard to Bodily Injury and Property Damage Liability" only. The absence of a similar endorsement for advertising injury claims is unsurprising since Texas law did not require such an endorsement. I see nothing odd or abhorrent in allowing an insurer to sell a policy using a nationally standardized form that is modified only to the

---

**39.** *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173–74 (Tex.1995) ("Compliance with the notice of suit provision is a 'condition precedent to the insurer's liability on the policy.'" (quoting *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 369 (Tex.1978))). Another of our post-*Hernandez* insurance cases retained the distinction, labeling a policy provision a condition precedent and concluding "because [the insured] did not comply with all conditions precedent to recover under the insurance policy," he was not entitled to sue or recover on the contract. *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 41 (Tex.1998). *Maldonado* did not reach the issue of prejudice, but its reaf-

firmation that an insured's failure to comply with a condition precedent barred recovery undercuts the application of *Hernandez* to conditions precedent.

**40.** In *Maldonado*, 963 S.W.2d at 40, and *Harwell*, 896 S.W.2d at 173–74, we characterized insurance policy provisions as conditions precedent.

**41.** *See supra* Part I.A.

**42.** *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649–50 (Tex.2007).

**43.** 243 S.W.3d at 635.

extent necessary to comply with a unique Texas requirement.

Finally, the Court views my approach as imposing "draconian consequences for even *de minimis* deviations from the duties the policy places on insureds."[44] In this case, PAJ's failure to comply with the policy's prompt-notice requirements cannot be described as *de minimis*. The record shows that several months passed before PAJ notified Hanover of the lawsuit, notification that PAJ admits was not "as soon as practicable." PAJ was not merely facing an "occurrence" or a potential claim under the policy; it had actually been sued. I do not intend to suggest that even the most trivial missteps in complying with notice or other policy requirements will justify total forfeiture of coverage. Texas law, for example, has long recognized that "substantial compliance" with a policy's notice or proof-of-loss provisions will suffice and that trivial missteps in complying with notice or other policy requirements are excused.[45] I would leave intact the "substantial compliance" doctrine as to an insured's myriad policy obligations, but there was no "substantial compliance" here. Our sole focus today should be whether to judicially engraft a prejudice requirement where none exists in the wording of the policy or in Texas law, and I would decline to do so.

## II. Conclusion

Courts should enforce unambiguous policy terms in accordance with their plain meaning.[46] As this Court recently af-

---

**44.** 243 S.W.3d at 636.

**45.** *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1056 (5th Cir.1996) (stating that "this court and Texas courts have held that substantial compliance with an insurance policy notice requirement will suffice," and holding that failure to forward suit papers as required in policy was excused where insured "substantially complied with the notice requirement by apprising [the insurer] in writing of the essential allegations of the underlying suits"); *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 576 n. 1 (Tex.App.-Texarkana 1997, no writ) (recognizing that "proof of loss and notice of claim are conditions precedent to recovery on the policy," but that "a claimant may still recover upon jury findings supporting theories of waiver or substantial compliance"); *Henry v. Aetna Cas. & Sur. Co.*, 633 S.W.2d 583, 584–85 (Tex.App.-Texarkana 1982, writ ref'd n.r.e.) (holding that failure to comply with written proof of claim requirement was excused because insured substantially complied with requirement when he had his mother report particulars of accident to insurance agent, who prepared written report on insurer's own form); *Dairyland County Mut. Ins. Co. v. Keys*, 568 S.W.2d 457, 458–59 (Tex.Civ. App.-Tyler 1978, writ ref'd n.r.e.) (holding, where insurer complained that insured "failed to give the proper notice of proof of loss in accordance with the terms of the policy," that insured substantially complied with policy when he went to agent's office and filled out a form providing particulars of loss); *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 403 S.W.2d 499, 505–06 (Tex.Civ.App.-Dallas 1966, writ ref'd n.r.e.) (holding that insured substantially complied with policy requirement that it provide sworn proof of claim, where insured provided unsworn proof of claim to insurer's agent and communicated with adjuster regarding particulars of loss); *Home Ins. Co. v. F.C. Flewellen Produce Co.*, 247 S.W. 833, 835–836 (Tex. Comm'n App. 1923, holding approved) (holding that failure to produce one inventory record did not violate policy requiring preservation and production of business records, where insured produced all other records and was not culpable for loss of the missing record); *see also Gladding v. Prudential Ins. Co. of Am.*, 521 S.W.2d 736, 737, 739 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) (holding that insured substantially complied with policy change of beneficiary provision by submitting an insurance form referring to designees by initials rather than full names as required by the form).

**46.** *Blaylock v. Am. Guarantee Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex.1982).

firmed in *Fiess*, we cannot fashion for parties a new-and-improved contract, "nor change that which they have made under the guise of construction,"[47] nor impose by judicial fiat a brand of justice, however earnest and strongly felt, that we find more personally congenial. The "better policy" remains that insurance contracts should be construed by courts and spruced up, if necessary, by nonjudicial bodies.[48] Accordingly, I would decline to embellish this policy's unequivocal notice-of-suit and "no action" restrictions by imposing an extra-contractual prejudice requirement that excuses the failure of a condition prec-

edent to coverage.[49] I would affirm the court of appeals' judgment that Hanover is not bound to defend or indemnify PAJ in the copyright infringement suit.

---

47. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex.2006)(internal quotation marks omitted) (quoting *East Tex. Fire Ins. Co. v. Kempner*, 87 Tex. 229, 27 S.W. 122, 122 (Tex. 1894)).

48. *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 281 (Tex.1972).

49. Texas courts are not alone in adopting the traditional rule and concluding that (1) notice requirements are conditions precedent, *see Greycoat*, 657 A.2d at 768; *Livorsi Marine*, 305 Ill.Dec. 533, 856 N.E.2d at 343; *Las Vegas Star Taxi*, 714 P.2d at 562; *Argo*, 794 N.Y.S.2d 704, 827 N.E.2d at 764; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 769 N.E.2d 835, 842 (2002); *Walton*, 423 S.E.2d at 192; *Colonial Ins. Co. v. Barrett*, 208 W.Va. 706, 542 S.E.2d 869, 874 (2000); *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 277 (Ind.Ct.App.1999), (2) the modern CGL "no action" language renders the notice requirement a condition of coverage that must be honored before the insurer is liable, *see AIG Centennial Ins. Co. v. Fraley–Landers*, 450 F.3d 761, 764–65, 767 (8th Cir.2006) (citing a prior case reviewing Arkansas law and so holding); *Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 102 Nev. 11, 714 P.2d 562, 562–63 (1986); *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 278 Ga.App. 1, 627 S.E.2d 917, 919 & n. 2 (2006), and (3) the insurer need not show prejudice in order to avoid coverage, *see AIG*, 450 F.3d at 768

(applying Arkansas law and concluding that although there are some divergent cases, Arkansas courts would not impose a prejudice requirement); *Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 n. 3 (D.C.1995); *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill.2d 303, 305 Ill. Dec. 533, 856 N.E.2d 338, 346 (2006); *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 794 N.Y.S.2d 704, 827 N.E.2d 762, 764 (N.Y.2005); *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 423 S.E.2d 188, 192 (1992).

Maryland holds otherwise; a court has held that notice provisions are covenants rather than conditions precedent. *See Sherwood Brands, Inc. v. Hartford Accident & Indem. Co.*, 347 Md. 32, 698 A.2d 1078, 1082 (Md. 1997). Notably, however, Maryland has a specific statute that requires proof of prejudice, MD.CODE ANN., INSURANCE § 19–110 (West 1997), something the Texas Legislature has never imposed and something TDI has expressly mandated only for property damage and bodily injury claims, *see* State Bd. of Ins., *supra* note 26.

Likewise, leading legal commentators recognize that notice provisions have been treated as conditions precedent rather than covenants. *See* 22 ERIC MILLS HOLMES, APPLEMAN ON INSURANCE § 139.1[B] (2d ed.2003); DONALD S. MALECKI & ARTHUR L. FLITNER, COMMERCIAL GENERAL LIABILITY 76–77 (4th ed.1992); 13 Lee R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE §§ 190.20, 190.25 (3d ed.1999).